[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13942
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00079-GAP-GJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DARRIOUS OMAR CLAY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 27, 2017)

Before MARCUS, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Darrious Omar Clay ("Defendant") appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e). Defendant argues that the district court erred in admitting into evidence under Rule 404(b) recorded phone calls in which Defendant discusses possessing firearms on other occasions. Concluding that the requirements for admission of evidence under Rule 404(b) were met, we affirm.

## I.    BACKGROUND

Defendant was indicted for possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e). This crime "entails three distinct elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003). Only the second element, the knowing possession of a firearm, is at issue in this appeal. In order to show that Defendant was in knowing possession of a firearm, the Government sought to admit under Rule 404(b)[1] recordings of Defendant's phone conversations while he was in prison, in which Defendant allegedly discussed, in code, his possession of firearms. The judge deferred ruling on admitting the recordings until after the Government presented its case.

---

[1] Rule 404(b) prohibits the admission of evidence of a defendant's extrinsic acts (here, the recorded phone calls) to prove a defendant's character and that a defendant acted in conformity with that character when he engaged in the charged criminal conduct. Fed. R. Evid. 404(b). However, such evidence may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Id.*

At trial, the Government called Defendant's arresting officer, Luke Austin, to testify. Austin testified that on the night of January 6, 2015, using his lights and sirens, he attempted to pull over a vehicle, but the vehicle did not stop. Austin followed the vehicle as it pulled into the driveway of a house and drove to the back of the residence. Austin parked on the street and walked up the driveway. When he came to the back of the house, he saw Defendant, who was a passenger in the car, exit the car with a gun in his hand. Austin testified that he saw Defendant place the gun in a cooler near the side of the house. Austin called for backup, after which Defendant and the driver were arrested. The Government presented photos of the arrest scene, including photos of the gun in the cooler. However, no fingerprints were recovered from the gun, nor were investigators able to recover any identifiable DNA from the gun.

After this testimony, the judge admitted the recordings over Defendant's objection. The judge noted: "My take on it is that you've got basically one witness [the arresting officer] who saw what happened[2] and you have a defense lawyer who did look into impeaching his testimony and so I think the need has been established." Significant excerpts from the transcripts of Defendant's remarks during jailhouse telephonic conversations include:

---

[2]  The Government did not call a witness who had allegedly seen the Defendant with a gun on the day in question because that witness's status as a convicted felon and as a beneficiary of a plea agreement raised credibility issues.

3

- "Just take that stick bro, that's just my, that my, that's all I can give back to you bro."

- "I told him he can have my chopper and whatever else man . . . ."

- "[Y]ou know every now and then, you got to go in there and fuck with that long thing bro, so it don't, you know, get all, all stiff and then, fuck, like rusted out and shit like you gotta go in there and just fuck with it a little bit. . . . I learned that from, you know, we got a little, we got a little gunsmith on our team, man, a little G.I. Joe."

- "But you do got my pole out there.  You got my fishing pole nigga, I, I, nigga.  That's all I'm about to tell them niggas is have my fishing pole when I get out nigga.  And that ain't, that ain't to do no evil with bae that's to have in my house, in our house you know. . . . I still want my, my long thing."

- "Bro, I'm talking about, I'm DUI, with the white, and the loud, and a swivel, no license, bad tag, I got the wrong tag on . . . ."

- "Tell Jit I say give you my fishing pole.  If he don't want to give it to you, show him the letter where I say, bro we I thought we were better than that, I'm tired of you lying to me, give bro my fishing pole. . . . Get my fishing pole."

- "Bro I want you to get that fishing pole bro so the raiders can have it bro. . . . But get that pole first.  Get that fishing pole first bro."

Offered as an expert witness, ATF Special Agent John Scanlon testified that "stick," "chopper," "long thing," "fishing pole," and "swivel" are each code words for firearms, with "long thing" and "fishing pole" especially referring to rifles.

In charging the jury, the district court expressly admonished the jury not to consider the recorded remarks in deciding whether Defendant engaged in the activity alleged in the indictment—possessing a firearm—but to consider these

4

remarks only in determining whether Defendant had the state of mind or intent necessary to commit the crime charged. After retiring for deliberations, the jury submitted three questions to the court, two of which were related to the recordings. The first question was, "If a gun was discussed on the phone, can it be assumed that the weapon is involved in interstate commerce?" The court told the jury that any guns discussed in the calls were not involved in the present case, and so their movement in interstate commerce was irrelevant to the present charge. The second question was, "Can we convict solely on the phone calls?" The court said that the answer is "emphatically no, absolutely not," as the phone calls were not direct evidence of Defendant's guilt. The judge admonished the jury to review his Rule 404(b) instructions.

After further deliberations, the jury convicted Defendant, who was sentenced to 15 years in prison. After the district court denied Defendant's motion for a new trial and entered final judgment against Defendant, Defendant appealed his conviction to this Court, challenging the admission of the recordings.

## II.    DISCUSSION

This Court uses a three-part test to determine whether evidence is admissible under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof for a jury to find that the defendant committed the extrinsic act; and (3) the probative value of the evidence

5

cannot be substantially outweighed by undue prejudice, and so must satisfy Rule 403.[3] *U.S. v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Defendant's challenge only addresses the first and third prongs of this test.

### A.    Standard of Review

We review a challenge to the district court's admission of evidence under Rule 404(b) for abuse of discretion. *Id.* at 1343; *Jernigan*, 341 F.3d at 1280. The district court's decision must be affirmed unless the district court made a clear error of judgment or applied the wrong legal standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

### B.    Relevance to an Issue other than Character

When Defendant entered a not guilty plea, he placed his knowledge and intent at issue. *Jernigan*, 341 F.3d at 1281 & n.7 ("Significantly, by pleading not guilty, [the defendant] placed this [knowledge] element of the § 922(g) offense in issue."); *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue . . . ."). This Court has noted that a defendant's prior knowing possession of a gun logically bears on his knowing possession of a gun in the charged offense. *Jernigan*, 341

---

[3]  Rule 403 reads:  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Rule 403 is an "extraordinary remedy," and should be used sparingly, "maximizing [evidence's] probative value and minimizing its undue prejudicial impact." *Edouard*, 485 F.3d at 1344 n.8 (internal citations and quotation marks omitted).

F.3d at 1281–82 ("Put simply, the fact that [the defendant] knowingly possessed a firearm in a car on a previous occasion makes it more likely that he *knowingly* did so this time as well, and not because of accident or mistake."). Similarly, "[the government] may prove [intent] by qualifying Rule 404(b) evidence . . . where the state of mind required for the charged and extrinsic offenses is the same." *Edouard*, 485 F.3d at 1345 (internal citations and quotation marks omitted).

Defendant argues that the tapes are irrelevant because the remarks alluding to firearms do not constitute an admission by Defendant that he had ever possessed a firearm. "Knowing possession" only requires the Government to show "constructive possession through direct or circumstantial evidence. Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006) (citation omitted). In the recordings Defendant talks about giving away "my chopper" and "stick," having someone get "my fishing pole," saying that he still wants "my long thing," and admitting to driving with a "swivel." These statements clearly suggest possession of a firearm in the past and a strong desire to possess a gun in the future. They are therefore relevant in showing that any possession by Defendant of a gun on the night of his arrest was no accident, but that instead it was done knowingly. Thus, this evidence is relevant to something other than Defendant's character and

7

propensity, and instead bears on the "knowing" element of the crime.  Thus, the recordings satisfy the first prong of the Rule 404(b) test.

### C.    Whether the Probative Value of the Evidence was Substantially Outweighed by Undue Prejudice

When examining the third prong of this Court's Rule 404(b) test, the inquiry is a "common sense assessment of all the circumstances," and includes considering prosecutorial need to show knowledge and intent, the overall similarity between the charged offense and the extrinsic act, and temporal remoteness.  *Jernigan*, 341 F.3d at 1282 (quoting *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997)); *Edouard*, 485 F.3d at 1345.  Rule 404(b) is a "rule of inclusion," and so "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case."  *Jernigan*, 341 F.3d at 1280 (quoting *United States v. Perez–Tosta*, 36 F.3d 1552, 1562 (11th Cir.1994)).  However, "if the government can do without such evidence, fairness dictates that it should; but if the evidence is essential to obtain a conviction, it may come in."  *United States v. Pollock*, 926 F.2d 1044, 1049 (11th Cir. 1991).

Defendant argues that the recordings should not have come in because the Government's case was overwhelming against him even without the recordings.  Specifically, Defendant points to Officer Austin's testimony, the crime scene

8

photos, and the gun itself as making the recordings unnecessary.[4]  We disagree that

the district court abused its discretion in admitting the recordings.  Officer Austin

had happened onto Defendant and the driver of the car after a fast-moving chain of

events in which the officer had chased the fleeing car in which Defendant was

riding.  The officer witnessed only momentary possession by Defendant of the gun,

as the officer saw Defendant exit the car and quickly place the gun in a nearby

cooler.  Defendant's own statements in the telephonic conversations demonstrated

Defendant's own familiarity and ownership of a different gun—and his desire to

lay hold of that gun again.  This evidence tended to establish that Defendant's

possession of the gun on the night of his arrest was not just a happenstance, but

was done knowingly.  Indeed, the Government had a "substantial burden . . . to

prove intent" because of Defendant's not guilty plea.  *Zapata*, 139 F.3d at 1358.

Without other evidence of Defendant's state of mind, the recordings were helpful

in showing that Defendant's possession of the gun seized by Officer Austin was

not inadvertent.  Thus, the tapes were properly admissible under Rule 404(b).  *See*

*Pollock*, 926 F.2d at 1049.

Other relevant factors weigh in favor of admission as well.  The state of

mind in the extrinsic act and the charged offense is not only similar, but is the

---

[4]  He also mentions the witness who allegedly saw Defendant possessing a gun but whom, because of credibility issues, the Government did not call to testify.  But as the Government never called this witness, his anticipated testimony was not part of the Government's case.

9

same:  knowing possession of a firearm.  In addition, Defendant's recorded calls and the charged offense are not too temporally remote, with Defendant's arrest occurring in January 2015, and the conversations taking place in January, February, and December 2015.  *See Jernigan*, 341 F.3d at 1282 (holding that a temporal separation of two and three years between prior convictions and the instant offense "is well within the temporal bounds of relevance.").  Finally, the court gave limiting instructions to the jury, explaining the use it could make of this evidence.  The jury is presumed to follow the court's instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Edouard*, 485 F.3d at 1346.  Thus, the recordings satisfy the third prong of Rule 404(b)'s requirement as well.

## III.    CONCLUSION

The recordings at issue in this case were relevant to an issue other than Defendant's character, and their probative value was not substantially outweighed by unfair prejudice.  Accordingly, the district court did not abuse its discretion by admitting the recordings under Rule 404(b).

**AFFIRMED.**

10