[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 22-11612

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

VERAN ANDREW,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60223-RAR-1

————————————

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Veran Andrew appeals his sentence of 87 months' imprisonment, which is comprised of consecutive sentences of 27 months' imprisonment for possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and 60 months' imprisonment for possessing a firearm during and in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Specifically, Andrew challenges the calculation of his 27-month term using Note A to the Drug Quantity Table, U.S.S.G. § 2D1.1(c). Note A provides that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), Note A.

Because Andrew possessed 29.60 grams of "heroin and fentanyl," the district court applied Note A and calculated the converted drug weight for the 29.60 grams as if it were entirely fentanyl. Accordingly, Andrew's total offense level was 17, which resulted in a 27–33-month guideline range. If the district court had treated the 29.60 grams as entirely heroin, Andrew's total offense level would have been 13 with a guideline range of 15-21 months.

Andrew argues that the district court should have treated the 29.60 grams of drugs as being entirely heroin for two reasons. First, he contends that the government did not prove by a preponderance of the evidence that he possessed a mixture of heroin and

fentanyl. Second, he asserts that the district court's application of Note A is absurd and unjust because it allows a defendant who possessed trace amounts of a substance to be sentenced as if he possessed a large amount of it. After careful review, we disagree and affirm.

We start with Andrew's argument that the government was required to prove at sentencing that he possessed a mixture of heroin and fentanyl. Andrew notes that he pleaded guilty to possession with intent to distribute heroin. But the Presentence Investigation Report, which the district court adopted, stated that he possessed "heroin and fentanyl [with] a net weight of 29.60 grams."

Andrew suggests that this statement in the report is ambiguous as to whether the heroin and fentanyl were mixed and, therefore, is insufficient to justify the district court's finding that he possessed a 29.60-gram mixture of heroin and fentanyl. We disagree. Even assuming there is some ambiguity in the report's use of the term "heroin and fentanyl," that ambiguity is clarified by two other parts of the report. First, Andrew also possessed cocaine, which the report noted separately "had a net of weight of 1.44 grams." If the heroin and fentanyl were not a mixture, the report would have separated their weights just as it did for cocaine. Second, the report calculated the converted drug weight as entirely fentanyl under Note A, which would apply only if the drugs were mixed. Had the drugs not been mixed, all agree, Note A would not apply. In context, therefore, it is clear that the 29.60 grams of "heroin and fentanyl" referenced in the report was a mixture.

Because Andrew did not object to the report's factual assertion that the heroin and fentanyl were a mixture, the government did not have to prove this fact. Although Andrew disputed the calculation of the converted drug weight as entirely fentanyl when he objected to the PSI, he did not dispute that the heroin and fentanyl were a mixture. Rather, Andrew argued that the district court could not use the converted drug weight for fentanyl because the government did not prove which kind of fentanyl Andrew possessed. At sentencing, the district court summarized Andrew's objection as arguing that "we cannot discern the level of fentanyl that is mixed up with [the heroin]." Andrew clarified that his objection was that the government did not prove what kind of fentanyl he possessed and how much he possessed. Andrew further argued that someone with a mixture that contains a small amount of fentanyl should not be punished the same as someone who possesses pure fentanyl.

On appeal, Andrew no longer pursues his argument that the government needed to prove the kind or amount of fentanyl. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014). And his failure to object to the facts in the presentence report precludes him from challenging them now or arguing that the government needed to prove them by a preponderance of the evidence. Absent objections, a district court may make findings of fact based on statements in the presentence report. *United States v. McCloud*, 818 F.3d 591, 595 (11th Cir. 2016). Unless a defendant disputes a fact in the report, the government does not have to

prove it by a preponderance of the evidence at sentencing. *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). "It is also established law that the failure to object to a district court's factual findings precludes the argument that there was error in them." *Id.*

Moving to Andrew's second argument, we cannot say the district court erred in treating the mixture of heroin and fentanyl the same as pure fentanyl under Note A. Andrew argues that Note A should not govern because it produces an absurd result—that someone with a trace amount of fentanyl mixed with a large amount of heroin would be sentenced as if they had a large amount of pure fentanyl. Andrew does not disagree that the ordinary meaning of Note A requires that a district court calculate a guideline range for a defendant who possessed a trace amount of fentanyl mixed with a large amount of heroin as if he possessed entirely fentanyl. Instead, he argues that this result is so unjust that the district court should have either (1) applied the absurdity doctrine to disregard Note A's plain language or (2) varied downward from the guideline range.

We review whether the district court correctly applied the Sentencing Guidelines *de novo*. *United States v. Gordillo*, 920 F.3d 1292, 1297 (11th Cir. 2019). "The language of the Sentencing Guidelines is to be given its plain and ordinary meaning, unless to do so would produce 'an absurd result contrary to the drafters'

manifest intent.'" *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (quoting *United States v. Tham*, 118 F.3d 1501, 1506-07 (11th Cir. 1997)). Only if it is inconceivable that a provision's drafters could have intended for the literal meaning of the provision to apply may we override its ordinary meaning using the absurdity doctrine. *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1350 (11th Cir. 2021).

Our precedents foreclose the argument that it is absurd to calculate the weight of a mixture as if it were entirely comprised of a drug that is a mere trace component of the mixture. Federal law has long punished those with a mere trace of a controlled substance without regard to the potency of it. *See United States v. Harold*, 588 F.2d 1136, 1143 (5th Cir. 1979). Note A's use of "mixture or substance" bears the same meaning as 21 U.S.C. § 841's use of "mixture or substance." U.S.S.G. § 2D1.1 cmt. n.1. This Court and the Supreme Court have recognized that for Section 841, although "'in some cases, the concentration of the drug in the mixture is very low," "Congress intended for the entire mixture or substance to be weighed so 'long as it contains a detectable amount' of the drug." *United States v. Segura-Baltazar*, 448 F.3d 1281, 1292 (11th Cir. 2006) (quoting *Chapman v. United States*, 500 U.S. 453, 459-61 (1991)). Given that Note A's use of "mixture or substance" has the same meaning as Section 841, it follows that it is not inconceivable that the drafters of Note A contemplated—just like Congress—that it would apply even if a drug was only a trace amount of a mixture.

Andrew's absurdity argument can also be construed as suggesting that the district court erred by declining to vary downward from the guidelines because of the purported injustice of treating mixed substances as pure substances. We have recognized that a district court may "vary from the guidelines based solely on its judgment that the policies behind the guidelines are wrong." *United States v. Irey*, 612 F.3d 1160, 1212 (11th Cir. 2010). But, to the extent Andrew's argument can be construed to challenge the district court's refusal to vary downward, we review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). This Court has recognized that "it is logical to be sentenced [for purposes of U.S.S.G. § 2D1.1] upon the gross weight of usable mixtures" because doing so punishes a defendant based on the substances that someone using the drug mixture will ingest. *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1237-38 (11th Cir. 1991). For this reason, to the extent Andrew challenges the substantive reasonableness of his sentence, we cannot say the district court's within-guidelines sentence was substantively unreasonable.

Accordingly, the district court is **AFFIRMED**.